**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **ROSANNA BAILEY** ) | |
| **5H Queen Victoria Way** ) | |
| **Chester, MD 21619** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | **Case No.: 1:23-cv-1559** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **THE QUEEN'S LANDING COUNCIL** ) | |
| **OF UNIT OWNERS, INC.** ) | |
| **500 Queen Landing Dr.** ) | |
| **Chester, MD 21619** ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

<u>**COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES**</u>

COMES NOW, Rosanna Bailey, Plaintiff, (hereinafter "Plaintiff") by and through undersigned counsel, and complains against Defendant, The Queen's Landing Council of Unit Owners, Inc., (hereinafter "Defendant" or "Queen's Landing") and in support thereof states as follows:

<u>**INTRODUCTION**</u>

1. This is an action authorized and instituted pursuant to the Fair Housing Act and Fair Housing Amendments Act (42 U.S.C. §§ 3601-3619, 3631) for the Defendant's unlawful discrimination based on race (African American, Black), sex, and disability against the Plaintiff, including, but not limited to, Defendants' unlawful and discriminatory preference and treatment of Plaintiff as compared to other unit owners, as well as retaliating against Plaintiff for her statutorily-protected activity.

## JURISDICTION AND VENUE

2. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically the Fair Housing Act and Fair Housing Amendments Act (42 U.S.C. §§ 3601-3619, 3631), to redress and enjoin employment practices of the Defendant.

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4. Venue is appropriate because a substantial part of the actions complained of are the result of actions and practices of Defendant, which operates in Chester, Maryland.

5. Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendants transact substantial business in this District, and Defendants maintain business records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

6. Plaintiff first filed a complaint with the United States Department of Housing and Urban Development ("HUD") on or about October 8, 2019 alleging race and color (African American, Black), sex (Female), and disability discrimination and retaliation (HUD No. 03-20-3559-8).

7. On or about October 10, 2019, HUD transferred Plaintiff's complaint to the Maryland Commission on Civil Rights ("MCCR") for investigation (MCCR No. 1910-0632).

8. On or about May 14, 2020, Plaintiff withdrew her MCCR complaint because Defendant had assured her that the issues she complained of would be resolved. However, Defendant

instead continued to perpetuate the same issues as well as to retaliate against Plaintiff for her prior filing and subject Plaintiff to further harassment and discrimination.

9.  As a result, on June 8, 2021, Plaintiff again filed a complaint with HUD against Defendant. Her complaint was again transferred to MCCR under case number 2106-0247 on June 10, 2021. During the time MCCR was investigating Plaintiff's complaint, Plaintiff was also involved in settlement negotiations with Defendant in a separate lawsuit concerning the financial costs of repairs to her condo unit. Though Plaintiff was open to a global settlement of all issues, Defendant offered only a settlement of financial costs, with the awareness that Plaintiff would then continue to pursue her claims regarding Defendant's discriminatory actions separately.

10. As a result, Plaintiff voluntarily withdrew her MCCR complaint from further investigation on April 6, 2023, and now files the instant matter to seek redress for Defendant's unlawful acts.

## NATURE OF THE ACTION

11. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

12. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, emotional tranquility, financial harm, and denial of her constitutional and statutory rights.

13. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

14. Plaintiff, Rosanna Bailey, is an African American female who resides in Queen Anne's County, MD.

15. Defendant is a Maryland corporation and condominium association located in Queen Anne's County, MD, formed in accordance with the Maryland Condominium Act.

16. Plaintiff owns a unit at Queen's Landing, which she purchased approximately seventeen years ago.

## FACTUAL ALLEGATIONS

17. Plaintiff, Dr. Rosanna Bailey, is a professional single Black woman who has experienced continuous discrimination based on her race, color, sex, age, and disability by Queens Landing Condominium Inc. Because of the complaints Plaintiff has made both directly to Queens Landing about the disparate treatment she has received as well as formal complaints made through the courts and administrative agencies, Plaintiff has also been retaliated against by Queens Landing.

18. In addition to severe mold allergies, Plaintiff has also been diagnosed with Optic Neuritis: Permanent Partial Vision Impairment. She also has monthly sessions with a therapist for an adjustment disorder and anxiety, caused by stress and anaphylactic response to mold, as well as the discrimination she has experienced since being maliciously targeted by Queens Landing's Board of Directors and Management. She also sustained spinal injuries from a car accident in which her vehicle was totaled by another driver in 2015, including a herniated disc in her neck and lower back. She has been given restrictions for a sedentary lifestyle not lifting more than 10 lbs. As a result, she alerted Defendant's management that

she could no longer rake and bag leaves (10-15 bags) that collected on her patio from the maple tree and surrounding trees in the community.

19. Plaintiff's experiences of discrimination by Queens Landing have been ongoing for several years. Upon information and belief, no professional single White women at Queens Landing have been denied services and maintenance, been displaced from their homes, and had extensive damage to their personal property in the way that she has experienced.

20. For almost four years, the Association has refused to report water intrusion and mold infestation in Plaintiff's unit resulting from the leaking sliders she has repeatedly requested to have repaired and replaced. On March 2, 2022, Plaintiff contacted the Association's Master Policy Insurance Agent and learned that there are no claims for her unit despite the fact that she has reported water intrusion to the Association in 2010, 2011, 2013, 2015, 2018, and 2019. This intrusion was caused by a contractor provided by the Association, who drilled holes into the threshold of Plaintiff's loft-level double storm doors while replacing the upper deck, applying putty around screws and creating a direct path for water intrusion to the main entrance. The contractors further did not place pans under the doors to prevent water intrusion, and as a result Plaintiff has suffered mold infestation from the leaking sliders and damaged storm doors. Two spigots were replaced by the Association during its restoration project, and hose bibs failed causing additional water intrusion. Sussex Environmental verified mold infestation in the walls around the sliders and door frameworks. Mold and Toxic Mold Stachybotrys and Chaetomium were confirmed in Plaintiff's unit in 2019 and 2021. She is severely allergic to mold and has a full disability.

21. The Association's disparate treatment of Plaintiff noticeably began in 2011 when it refused to replace her leaking, broken sliders. Manager Lynda Brady had wooden bars made to

secure the sliders since the locks did not work, which was at best a temporary measure and did not provide an adequate repair or replacement for this issue. Plaintiff had to use plastic to cover the sliding doors of her condo to retain heat inside her unit in the winter through 2014.

22. In 2011, Plaintiff paid for landscaping, selecting a decorative Bonsai tree and other perennials for her unit. Her neighbor at that time and she both had beautiful flowers at their shared entrance. Plaintiff's landscaping was destroyed during the Association's community project to replace the plumbing from the curb to her unit. When Plaintiff arrived, her plantings were all dead. Her White neighbors' flower beds remained untouched. The Association has provided no compensation for the damage.

23. In 2012, the Maintenance Committee sent a letter to Plaintiff informing her that her maintenance requests for the leaking sliders to be replaced would not be a part of the Association's restoration project, despite Plaintiff's contribution of $56,000.

24. In 2014, previous Board Director Carol Reiter told a White owner to submit an ACR to the Association and be ready to pay for their work to be done. Plaintiff attempted to do the same, and submitted an offer to pay for a superior grade slider. Her offer was denied. Plaintiff was treated differently from White owners in the community, who over the years have had their requests approved to install sliders of varying sizes in order to increase their water view, in contrast to Plaintiff who was repeatedly denied her requests for new sliders due to the damage to her existing sliders and the subsequent damage caused by them to her property. Lynda Brady informed Plaintiff that the Association had been using Mitchells Glass Company to install sliding doors and windows in rental units, but the Association refused to extend these services to Plaintiff. Plaintiff requested new superior grade sliders

similar to those her White neighbors received, and the Association indicated that she would have to pay $1400 for the difference in cost of the higher-grade Anderson sliders. She agreed to instead accept the Atrium sliders if the Association would agree to replace them immediately if they leaked. Plaintiff's White neighbors did not have to pay an additional cost for the superior grade Andersen Sliders and windows they received during the restoration project.

25. Also in 2014, during the Association's Restoration Project Plaintiff's entire landscaping and flower beds were again destroyed. Her White neighbors' landscaping and flower beds were untouched before, during and after the restoration project.

26. In 2017 after a tornado, Plaintiff arrived at her property to find that all of the large tree branches from the trees on the marina were piled up on the lawn at her entrance. She emailed Tammy Eaton the next morning and asked, "why are all of these huge tree branches in front of my condo?" M. Eaton responded, "We have planned for them to be picked up." However, Plaintiff's White neighbors' lawns were undisturbed.

27. In 2019, Chairman of the Maintenance Committee Bob Bradford indicated to Plaintiff that the Association would restore her condominium after they went to court. Remediation was denied for her unit, and the Association still did not report water intrusion to the Master Policy Insurance. However, Plaintiff's White neighbor at 5A had water intrusion work done by an outside contractor and was reimbursed by the Association.

28. The builders grade Atrium Series 312 sliders provided to Plaintiff were not built for coastal use for a waterfront property, and the Association refused to replace them with a superior grade fully-functioning slider in violation of the bylaws until the 2022 community project.

However, Plaintiff's White neighbors received Marvin sliders before August 29, 2022 that replaced the Andersen sliders they received during the 2014 restoration project.

29. When Plaintiff arrived to get her mail on August 15, 2022, she was excited to see Harper and Sons delivering a new slider after having waited since 2014. However, she then learned that the new slider was for her White neighbor directly across from her at Unit 6A. The Association then misled Plaintiff into signing a settlement agreement to have Marvin Sliders installed and the exterior work completed, which was signed on August 24, 2022. When Plaintiff asked Tammy Eaton when her work would start, she responded, "Your work will be completed after settlement." When she arrived on August 29, 2022 her White neighbors' Marvin slider doors were being installed. The Association refused to provide superior grade sliders to Plaintiff until the planned community project to install Marvin sliders from the reserves at no cost to the unit owners. Her White neighbors have not been discriminated against based on their race, disability, and gender.

30. Association representatives such as Tammy Eaton have continually refused to talk to Plaintiff or discuss any repairs since she initiated legal action. Ms. Eaton's response has been to "speak with your attorney since you have a legal issue." Maintenance Chair Mr. Bradford told Plaintiff after an inspection that the Association would restore her condo after they go to court, and that after determining what caused the water leakage around the sliders and performing water testing then they would restore her condo. The Settlement Agreement for the Exterior work was completed on August 28, 2022. The water testing was completed, but the Association still did not replace Plaintiff's sliders until 2022. Her White neighbors' exterior work has been completed since the end of September 2022, for units 1F, 5A and 6A.

31. Manager Lynda Brady has responded "I feel threatened" when Plaintiff asks her questions about her repair requests, and does not respond similarly to White owners who are instead welcomed and treated respectfully. Ms. Brady also told Plaintiff "you have to pay to stay or move out" when she discussed with her the financial strain the special assessment for her property would cost. Plaintiff refinanced her property to pay for the special assessment. The Association offered the majority of White owners financing to pay for their special assessments. Ms. Brady also repeatedly responded, "There is a difference between a want and a need" in answer to Plaintiff's requests for new sliders in 2011,2013 and 2015. The responses "I feel threatened" and "there is a difference between a want and a need" have been used by other administrative staff since the new Tidewater Management began at the end of 2015.

32. On March 7, 2023 at 10:46 AM, Defendant's attorney contacted Plaintiff's prior counsel via email to inform him that the water pipe in the unit next to hers was discovered to have been leaking, and notified him that management planned to enter Plaintiff's unit with its copy of her key to investigate the alleged issue. Less than an hour later, Defendant then sent another email, claiming that because Plaintiff locked her storm doors, it was unable to access the unit and accused Plaintiff of obstructing its statutory and contractual right of entry. However, Plaintiff was not contacted directly via phone, text, or email to request access to her unit.

33. On April 10, 2023, Plaintiff observed that her main entrance storm doors appeared to have been tampered with, and did not appear secure. On April 25, 2023, Plaintiff called 911 to report evidence of forced entry to her unit after discovering that the lock on the handle of the door was unlocked, and the doors had been forced open while the deadbolt was still

engaged and sticking out from the frame. As she stood outside her front doors, she observed her neighbor Jaci Hendricks, who is also the Treasurer and a member of the Board of Directors of the Association, taking photos of her from inside the door of her unit, 6A. To Plaintiff's knowledge, Ms. Hendricks has also photographed her on other occasions. Ms. Hendricks watched and photographed Plaintiff on April 10th as she attempted to re-secure her storm doors, and also observed and photographed Plaintiff as early as March 14, 2022, prompting Plaintiff to wave directly at her as she left her unit while Ms. Hendricks pointed a camera in her direction.

34. Plaintiff's Architectural Change Request ("ACR") to install blink video cameras and motion detection lights outside her unit for her safety was denied by Defendant, though she knows of at least fourteen other neighbors in the community who do have video cameras at their entrances.

35. All of the above instances are evidence of the consistent discriminatory treatment that Plaintiff faced at the hands of Defendant's representatives. The more Plaintiff spoke up about the treatment she was facing and filed complaints with local and federal agencies, the more she was subjected to retaliation by Defendant. Despite allegations by Ms. Eaton and others that she has "always been inaccessible," Plaintiff had never been contacted directly until recently, despite her own efforts to engage Defendant's representatives.

36. Plaintiff has been the target of race and color, sex, and disability discrimination as well as retaliation by Defendant. The aforementioned misconduct was so egregious and pervasive that it has affected the Plaintiff's mental, emotional, and physical wellbeing in irreparable ways.

37. Plaintiff is now forced to file suit due to the Defendant's inability to remedy its unlawful conduct, which has cost Plaintiff significant financial strain as well as emotional distress. Due to the discriminatory and retaliatory treatment Plaintiff experienced, she suffers daily stress and anxiety and has experienced lasting harm which is ongoing to this day.

38. The Defendant's discriminatory and retaliatory practices have been effectuated in violation of the Fair Housing Act and Fair Housing Amendments Act (42 U.S.C. §§ 3601-3619, 3631).

<u>**COUNT I**</u>

**VIOLATION OF 42 U.S.C. §§ 3604 – RACE AND COLOR DISCRIMINATION**

39. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

40. Pursuant to 42 U.S.C. § 3604(b), "[I]t shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." "An 'FHA claim can proceed under either a disparate-treatment or a disparate-impact theory of liability.' *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 421 (4th Cir. 2018). 'Under a disparate-treatment theory of liability, 'a plaintiff must establish that the defendant had a discriminatory intent or motive,' whereas 'a plaintiff bringing a disparate-impact claim challenges practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale.'' *Id.* (quoting *Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 135 S. Ct. 2507, 2513, 192 L. Ed. 2d 514

(2015)).” *Adams v. Cameron*, Civil Action No. TDC-20-3739, 2021 U.S. Dist. LEXIS

219387, at *12-13 (D. Md. Nov. 12, 2021).

41. The Federal Circuit Courts have recently been asked to address whether the FHA may

reach post-acquisition conduct, as alleged in this case. The Seventh Circuit and the Ninth

Circuit have both found that such conduct is covered by the FHA. *See Bloch v. Frischholz*,

587 F.3d 771 (7th Cir. 2009); *Comm. Concerning Cmty. Improvement v. City of Modesto*,

583 F.3d 690 (9th Cir. 2009). As the Fourth Circuit has acknowledged,

> “The Seventh Circuit held, among other things, a plaintiff could sue on the
> basis of post-acquisition conduct under § 3604 and § 3617. [*Bloch*] at 782
> (finding that ‘§ 3604 requires that the plaintiffs’ dwelling be made truly
> unavailable, or that defendants deprived plaintiffs of their privilege to
> inhabit their dwelling’ and ‘§3617 reaches a broader range of post-
> acquisition conduct’). Further, it held that the plaintiffs could assert a claim
> pursuant to § 3617 without alleging a violation of another section of the
> FHA; the Seventh Circuit reasoned that holding otherwise would make §
> 3617 entirely duplicative of the other FHA provisions. *Id.* at 782-83 (finding
> the § 3617 question in that case to be “whether the defendants coerced,
> intimidated, threatened, or interfered with the [plaintiffs’] exercise or
> enjoyment of their right to inhabit their [property] because of their race or
> religion’). The Court finds *Bloch* to be well reasoned, and finds that Plaintiff
> may maintain her FHA claim pursuant to § 3617.”

*Radcliffe v. Avenel Homeowners Ass’n*, No. 7:07-CV-48-F, 2013 U.S. Dist. LEXIS 21422,

at *16–18 (E.D.N.C. Feb. 12, 2013).

> “In particular, the evidence supports an inference of a pattern or practice of
> discrimination in the "the terms, conditions, or privileges" of rental, or
> interference with exercise of rights of a tenant, through withholding repair
> and maintenance, in violation of 42 U.S.C. § 3604(b) or § 3617. See 24
> C.F.R. § 100.65 (prohibited actions under § 3604(b) include ‘[f]ailing or
> delaying maintenance or repairs . . . because of race’); *Bloch v. Frischholz*,
> 587 F.3d 771, 780-782 (7th Cir. 2009) (en banc) (holding that violation of
> § 3604(b) and § 3617 may be based upon post-rental management and
> administration of rental units by condo association); *see also Radcliffe v.
> Avenel Homeowners Ass'n, Inc.*, No. 7:07-CV-48-F, 2013 U.S. Dist. LEXIS
> 21422, 2013 WL 556380, at *5 (E.D.N.C. Feb. 12, 2013) (recognizing that
> ‘a plaintiff [can] sue on the basis of post-acquisition conduct under § 3604
> and § 3617’); *United States v. Matusoff Rental Co.*, 494 F.Supp.2d 740, 743

(S.D. Ohio 2007) (finding, in part, violation of § 3604(b) where the landlord instructed maintenance worker not to repair or replace appliance in the apartment of black tenant, and discouraged him from performing maintenance on units of black tenants).

*United States v. Cochran*, 39 F. Supp. 3d 719, 734 (E.D.N.C. 2014). As such, Plaintiff asserts that the FHA's provisions are applicable to the Defendant's actions in this suit.

42. To state a *prima facie* case of discrimination under the FHA, a Plaintiff "'must show that [s]he is a member of a protected class and that [s]he was treated differently than other tenants because of . . . membership in that class.' *Roberson v. Graziano*, No. WDQ-09-3038, 2010 U.S. Dist. LEXIS 50976, 2010 WL 2106466, at *2 (D. Md. May 21, 2010), aff'd, 411 Fed. Appx. 583 (4th Cir. 2011)." *Adams* at *13.

43. Here, the elements of a *prima facie* case of race and color discrimination are met. The Plaintiff is African American and Black, and is considered a member of a protected class as stipulated under the FHA.

44. Because of her race and color, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of the FHA.

45. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's housing.

46. Defendant knew that Plaintiff was African American and Black prior to the actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her race and color.

47. Plaintiff has been treated differently and subjected to different terms and conditions of her housing due to her race and color.

48. Other owners who were similarly situated, but were non-Black or Caucasian individuals, have been treated more favorably than the Plaintiff with regard to the terms and conditions of their housing.

49. Plaintiff's race and color were a determining factor in Defendant's unlawful conduct toward Plaintiff.

50. Plaintiff's race and color were a motivating factor in Defendant's unlawful conduct toward Plaintiff.

51. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

52. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her race and color.

53. Defendant discriminated against Plaintiff because of her race and color by engaging in, tolerating, or failing to prevent race and color discrimination and by failing to take affirmative action to correct and redress the unlawful practices perpetrated against Plaintiff.

54. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

55. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages and is entitled to all available legal and equitable remedies.

56. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

57. Defendant must comply with the FHA, but by and through its conduct, has violated the FHA.

## COUNT II

### VIOLATION OF 42 U.S.C. §§ 3604 – SEX DISCRIMINATION

58. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

59. Pursuant to 42 U.S.C. § 3604(b), "[I]t shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." The Act recognizes two types of discrimination: (1) discriminatory treatment and (2) disparate impact.

60. To state a *prima facie* case of discrimination under the FHA, a Plaintiff "'must show that [s]he is a member of a protected class and that [s]he was treated differently than other tenants because of . . . membership in that class.' *Roberson v. Graziano*, No. WDQ-09-3038, 2010 U.S. Dist. LEXIS 50976, 2010 WL 2106466, at *2 (D. Md. May 21, 2010), aff'd, 411 Fed. Appx. 583 (4th Cir. 2011)." *Adams* at *13.

61. Here, the elements of a *prima facie* case of sex discrimination are met. The Plaintiff is female, and is considered a member of a protected class as stipulated under the FHA.

62. Because of her sex, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of the FHA.

63. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's housing.

64. Defendant knew that Plaintiff was female prior to the actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her sex.

65. Plaintiff has been treated differently and subjected to different terms and conditions of her housing due to her sex.

66. Other owners who were similarly situated, but were not female, have been treated more favorably than the Plaintiff with regard to the terms and conditions of their housing.

67. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

68. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

69. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

70. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her sex.

71. Defendant discriminated against Plaintiff because of her sex by engaging in, tolerating, or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful practices perpetrated against Plaintiff.

72. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

73. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages and is entitled to all available legal and equitable remedies.

74. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

75. Defendant must comply with the FHA, but by and through its conduct, has violated the FHA.

## COUNT III

## VIOLATION OF 42 U.S.C. §§ 3604 – DISABILITY DISCRIMINATION

76. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

77. Pursuant to 42 U.S.C. § 3604(f)(2), "[I]t shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of— (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person." The Act recognizes two types of discrimination: (1) discriminatory treatment and (2) disparate impact.

78. Here, the elements of a *prima facie* case of disability discrimination are met. Plaintiff is disabled, and is considered a member of a protected class as stipulated under the FHA.

79. Because of her disabilities, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of the FHA.

80. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's housing.

81. Defendant knew that Plaintiff was disabled prior to the actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her disability.

82. Plaintiff has been treated differently and subjected to different terms and conditions of her housing due to her disability.

83. Other owners who were similarly situated, but were not disabled, have been treated more favorably than the Plaintiff with regard to the terms and conditions of their housing.

84. Plaintiff's disability was a determining factor in Defendant's unlawful conduct toward Plaintiff.

85. Plaintiff's disability was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

86. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

87. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her disability.

88. Defendant discriminated against Plaintiff because of her disability by engaging in, tolerating, or failing to prevent disability discrimination and by failing to take affirmative action to correct and redress the unlawful practices perpetrated against Plaintiff.

89. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

90. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages and is entitled to all available legal and equitable remedies.

91. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

92. Defendant must comply with the FHA, but by and through its conduct, has violated the FHA.

## COUNT IV

## DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

1. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

2. The ADA prohibits discrimination based on disability. *See* 28 C.F.R. Part 36.

3. The ADA requires that covered employers provide reasonable accommodations to employees with disabilities.

4. Defendant was aware of Plaintiff's disability status and did not provide reasonable accommodations, and subjected Plaintiff to treatment resulting in a disparate impact upon her as compared to non-disabled owners.

5. Defendant used this disability status to harass, demean, degrade, and humiliate Plaintiff.

6. Plaintiff has suffered irreparable harm and injury as a result of this unlawful misconduct.

## COUNT V

### VIOLATION OF 42 U.S.C. § 3617 – RETALIATION

7.  Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

8.  42 U.S. Code § 3617 states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

9.  Here, Plaintiff faced retaliation and intimidation for the complaints she made with the Association, as well as the administrative and civil complaints she filed with HUD, MCCR, and the local courts.

10. After complaining, Plaintiff was subjected to the ongoing unlawful conduct and adverse actions alleged throughout this Complaint in violation of the FHA.

11. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful and discriminatory practices of Defendant in violation of the FHA.

12. Defendant knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by a HUD or MCCR representative, or otherwise should have known that Plaintiff engaged in the complaint process based on her informal and formal complaint filings. The adverse retaliatory actions Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

13. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

14. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

15. Similarly situated owners (no prior protected activity) were not subjected to the same, similar, or any adverse treatment.

16. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

17. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's housing.

18. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her opposition to Defendant's discriminatory conduct.

19. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

20. Defendants' actions were intentional, reckless, and malicious.

21. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages and is entitled to all available legal and equitable remedies.

22. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions are ongoing.

23. Defendant must comply with the FHA, and by and through its conduct, violated the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Dr. Rosanna Bailey, respectfully prays that this Court grant her the following relief:

a. Enter a declaratory judgement finding that the foregoing actions of Defendant violated the Fair Housing Act and Fair Housing Amendments Act (42 U.S.C. §§ 3601-3619, 3631);

b. Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c. Award compensatory damages in the amount of $750,000 (seven hundred and fifty thousand dollars and zero cents) that would fully compensate Plaintiff for the economic loss, reputation, physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d. Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e. Order such other relief as this Court deems just and equitable.


## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: June 8, 2023

<div style="margin-left: 50%;">

Respectfully submitted,

By: /s/ Dionna Maria Lewis
Dionna Maria Lewis, Esq.
Bar No. 19486
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098

</div>

Washington, D.C.20003
Tel. (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Rosanna Bailey*