IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROSANNA BAILEY,<br>    *Plaintiff*,<br><br>v.<br><br>THE QUEEN'S LANDING COUNCIL<br>OF UNIT OWNERS, INC.,<br>    *Defendant* | No. 23-cv-1559-ABA |

**MEMORANDUM OPINION**

Plaintiff Rosanna Bailey lives in a condominium community on Kent Island in Chester, Maryland. She feels that her condominium board—the Queen's Landing Council of Unit Owners, Inc. (the "Council" or "Defendant")—has treated her inequitably when it comes to matters such as facility repairs and landscaping. She filed this action contending that the Council's conduct constitutes discrimination and/or retaliation in violation of the Fair Housing Act, 42 U.S.C. § 3604, and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. Defendant has moved to dismiss all claims. No hearing is necessary. *See* Loc. R. 105.6. For the reasons stated below, the Court will grant the motion to dismiss but will grant Plaintiff leave to file an amended complaint.

**I.  BACKGROUND[1]**

Dr. Bailey and the Council have a long history of disagreement and litigation reaching back to 2010. ECF No. 1 ("Compl.") ¶¶ 20-34. In her current complaint, Plaintiff contends that Defendant has discriminated against her because of her race, sex, and disability and engaged in

---

[1]  At this stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

retaliation by failing to properly maintain her condominium unit and provide services and benefits that are available to other residents. Many of Plaintiff's allegations arise from Defendant's alleged failure to properly maintain and timely replace exterior sliding doors that allowed water to leak into her unit. *See id.* ¶¶ 20-21, 23-24, 27-31. She also alleges that in 2011 and 2014 her flower beds were destroyed when Defendant performed maintenance while white neighbors' beds allegedly were undisturbed. *Id.* ¶¶ 22 & 25. She alleges that in 2017, after a tornado, there were large branches piled in front of her door while allegedly there were no branches in front of her white neighbors' doors. *Id.* ¶ 26. She alleges that in March 2023 Defendant's counsel contacted Plaintiff's prior counsel and told him there was a leaking water pipe in the unit next to Plaintiff's and that Defendant would have to enter her unit to investigate, and later alleged to her prior counsel that Plaintiff was obstructive because Defendant could not enter her unit. *Id.* ¶ 32. She alleges that in April 2023 she observed that someone had tampered with her main entrance storm door and that a member of Defendant's board of directors took pictures of her inspecting the door, *id.* ¶ 33, and on other occasions as well. *Id.* Finally, Plaintiff alleges that at some point Defendant denied her request to install video cameras and motion detecting lights, while at least fourteen other residents allegedly received cameras. *Id.* ¶ 34.

In filing this action, Plaintiff contends that this course of conduct constitutes unlawful discrimination in violation of the FHA and/or ADA, and that the Council has retaliated against her for asserting what she contends are her rights under those statutes. Specifically, she asserted four counts under the Fair Housing Act, 42 U.S.C. § 3604 ("FHA") (Counts I, II, III, and V), and one count under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), pursuant to 28 C.F.R. Part 36 (Count IV).

Defendant has moved to dismiss all of Dr. Bailey's claims. ECF No. 20 (motion); ECF No. 20-1 (Memorandum in Support) ("Def.'s Mem."). It contends that Dr. Bailey's FHA claims should be dismissed, at least in part, on preclusion and statute of limitations grounds. It contends Dr. Bailey's ADA claim should be dismissed for failure to state a claim on which relief can be granted. Dr. Bailey filed a memorandum in opposition, ECF No. 23-1 ("Opp."), and the Council has replied, ECF No. 24 ("Reply").

## II.  STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

## III.  DISCUSSION

As noted above, Dr. Bailey asserts claims of discrimination and retaliation under the FHA and the ADA. The Court first addresses her claims of sex discrimination and disability

discrimination; those will be dismissed for failure to state a claim. As to Dr. Bailey's claims of racial discrimination, some of her claims are barred by claim preclusion by virtue of a judgment entered in prior litigation between the parties in the Circuit Court for Queen Anne's County, and others of her claims are time-barred by the FHA's two-year statute of limitations. Although Dr. Bailey alleges facts regarding occurrences within the limitations period and not encompassed by the prior judgment, the complaint does not allege sufficient facts to state claims on which relief can be granted. The Court, however, will grant Dr. Bailey leave to amend her complaint, in the event and to the extent she believes she has legally cognizable claims consistent with this opinion.

### A. Dr. Bailey's Claims of Sex Discrimination (Count II) and Disability Discrimination (Counts III and IV)

As an initial matter, Plaintiff's claims of discrimination based on sex (Count II, under 42 U.S.C. § 3604(b)), and disability (Count III, under 42 U.S.C. § 3604(f)(2)), will be dismissed as Plaintiff asserts no factual allegations (as opposed to bald conclusions) to support these claims. All factual assertions of *discrimination* in the complaint relate to allegations of discrimination on the basis of race. *See* Compl. ¶ 19 ("no professional single White women at Queens Landing have been denied services and maintenance . . . in the way that [Plaintiff] has experienced."); ¶ 22 ("When Plaintiff arrived, her plantings were all dead. Her White neighbors' flower beds remained untouched."); ¶ 24 ("Plaintiff was treated differently from White owners in the community . . . ."); ¶ 25 ("[Plaintiff's] White neighbors' landscaping and flower beds were untouched . . . ."); ¶ 26 ("Plaintiff's White neighbors' lawns were undisturbed."); ¶ 27 ("Plaintiff's White neighbor at 5A had water intrusion work done by an outside contractor and was reimbursed by the Association."); ¶ 28 ("Plaintiff's White neighbors received Marvin sliders before August 29, 2022 . . . ."); ¶ 29 ("[Plaintiff] then learned that the new slider was for her

4

White neighbor directly across from her at Unit 6A."); ¶ 30 ("[Plaintiff's] White neighbors' exterior work has been completed since the end of September 2022."); ¶ 31 ("Manager Lynda Brady has responded 'I feel threatened' when Plaintiff asks her questions about her repair requests, and does not respond similarly to White owners who are instead welcomed and treated respectfully"); *id.* ("The Association offered the majority of White owners financing to pay for their special assessments.").

As to Count II, the most Dr. Bailey alleges is that "[b]ecause of her sex, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of the FHA." *Id.* ¶ 62. But that is a purely conclusory allegation, devoid of factual allegations that, if true, would entitle her to relief. *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 557).

As to Count III, Dr. Bailey does allege that she suffers from a mold allergy, optic neuritis, adjustment disorder and anxiety. Compl. ¶ 18. She further contends that her adjustment disorder and anxiety were "caused by stress and anaphylactic response to mold," *id.*, and that Defendant's failure to repair her sliding doors caused a "mold infestation." *Id.* ¶ 20. But those are allegations of injury, not discrimination on the basis of disability. In other words, Dr. Bailey does not allege that she was treated differently (and adversely) *because* of her alleged disabilities, but rather that she was discriminated against on the basis of her race, and that in light of her alleged disabilities she suffered harm. Plaintiff's complaint does not contain factual allegations that would state a claim that Defendant "discriminat[ed] against [her] . . . in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." *See* 42 U.S.C. § 3604(f)(2).

5

Finally, as to Count IV, alleging disability discrimination in violation of the Americans with Disabilities Act, Plaintiff asserts a violation of the ADA pursuant to 28 C.F.R. Part 36. The purpose of Part 36 is to "prohibit[] discrimination on the basis of disability by covered public accommodations and require[] places of public accommodation and commercial facilities to be designed, constructed, and altered in compliance with the [ADA]." 28 C.F.R. § 36.101(a). Thus, Part 36 applies only to "commercial facilities" and "public accommodations." "Commercial facilities" include facilities "[w]hose operations will affect commerce" and "are intended for nonresidential use . . ." and specifically excludes "[f]acilities that are covered . . . under the Fair Housing Act of 1968." *Id.* at § 36.104. "Public accommodations" include short-term lodgings such as hotels, as well as restaurants, theaters, convention centers, commercial establishments providing services or selling goods, transportation depots, museums, libraries, schools, parks, zoos, social service centers, and gymnasiums. *Id.*

Neither term encompasses Plaintiff's long-term residential condominium and, thus, Part 36 is inapplicable under these facts. *See, e.g.*, *Paterson v. SK5 Wolverine Crossing, LLC*, No. 2:16-CV-1264, 2018 WL 2023545, at *4 (D. Utah May 1, 2018) (finding that a residential apartment complex was not a public accommodation); *Reid v. Zackenbaum*, No. 05-CV-1569, 2005 WL 1993394, at *4 (E.D.N.Y. Aug. 17, 2005) ("A residential facility, such as an apartment, is not a public accommodation under the ADA."); *Radivojevic v. Granville Terrace Mut. Ownership Tr.*, No. 00-CV-3090, 2001 WL 123796, at *3 (N.D. Ill. Jan. 31, 2001) (finding that "apartments and condominiums are not places of public accommodation"). Although discrimination on grounds of disability "in the sale or rental [of], or to otherwise make unavailable or deny, a dwelling to any buyer or renter" is prohibited by virtue of the Fair Housing Amendments Act of 1988, *see, e.g.*, 24 C.F.R. § 100.201 & .202, that does not expand

6

the limited scope of the ADA Part 36 regulations, which do not cover residential housing like Queen's Landing.

For these reasons, Counts II, III and IV, alleging discrimination on the basis of sex and disability, will be dismissed for failure to state a claim.

### B. Dr. Bailey's Fair Housing Act Claims of Race and Color Discrimination (Count I) and Retaliation (Count V)

The core of Dr. Bailey's complaint is that she has been subjected to disparate treatment because she is Black, in violation of 42 U.S.C. § 3604(b) (Count I), and that Defendant retaliated against her for asserting that the Council was discriminating against her on the basis of her race, in violation of 42 U.S.C. § 3617 (Count V). The Council's argument for dismissal of these counts proceeds in three parts. It argues that (1) some of her claims of racial discrimination and retaliation were previously litigated and decided in connection with litigation in the Circuit Court for Queen Anne's County; (2) those claims, and others, are barred by the FHA's two-year statute of limitations, 42 U.S.C. § 3613(a)(1)(A); and (3) insofar as any of Dr. Bailey's allegations fall outside the preclusive effect of the Queen Anne's County judgment, and outside of any settlement release, and within the statute of limitations, such allegations do not state claims on which relief can be granted.

#### 1. Claim Preclusion

As noted above, Dr. Bailey claims that the Council discriminated against her in various ways. One way is through Defendant's alleged failure to replace her sliding doors, which had leaked water into her residence in "2010, 2011, 2013, 2015, 2018, and 2019." Compl. ¶ 20. *See also id.* ¶ 21 ("The Association's disparate treatment of Plaintiff noticeably began in 2011 when it refused to replace her leaking, broken sliders."). But the parties have already litigated disputes regarding water leaks, including the leaks related to Dr. Bailey's sliding doors. On April 30,

7

2020, Dr. Bailey sued the Council in the Circuit Court for Queen Anne's County (the "Queen Anne's Action"). *See* ECF No. 20-3 ("QA Compl."). Her complaint in that case asserted five counts: specific performance (Count I), two counts of breach of contract (Counts II and III), breach of fiduciary duty (Count IV), and negligence (Count V). *Id.* ¶¶ 35-65. Each of those claims arose from Dr. Bailey's allegations that the Council had failed to properly maintain, repair, or replace components for which Defendant was responsible, including the exterior sliding doors of her unit, which caused water damage inside the unit—as well as the moisture and mold intrusion that she invokes in this case as part of her alleged damages. *See, e.g.*, *id.* ¶¶ 23-29. On September 30, 2020, Defendant filed a two-count counterclaim seeking, among other things, a declaratory judgment that Defendant's decision to replace the existing exterior sliding doors with its chosen brand was authorized by the condominium bylaws and that it was "not responsible for damages arising from or out of water intrusion into" Plaintiff's unit. *See* ECF No. 20-4 (Circuit Court's opinion on motion for summary judgment) ("QA Op.") at 3-4.[2]

At bottom the Queen Anne's County case revolved around the parties' disputes over which party was responsible for having caused water damage to Dr. Bailey's condominium unit (including whether the Council's contractors had been negligent in conducting certain repairs to

---

[2] Generally, a court will not consider documents extrinsic to the complaint when deciding a Rule 12(b)(6) motion to dismiss. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). In considering such a motion, however, a court "may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). *See also Papasan v. Allain*, 478 U.S. 265, 283 (1986) (considering in connection with motion to dismiss "relevant facts obtained from the public record in the light most favorable to the petitioners"). Here, this Court will consider the complaint and the summary judgment opinion from the Queen Anne's Action (ECF Nos. 20-3 and 20-4, respectively), which were attached to Defendant's motion to dismiss, because they are public records and Plaintiff does not dispute their authenticity. *See* Pl.'s Resp., ECF No. 32-1 at 3 ("Plaintiff does not deny the existence of a prior suit between the parties . . . .").

areas around her unit), which party was responsible for preventing and fixing the damage (including whether the bylaws exculpated the Council), and which party could select the brand of sliding doors the Council would install.

The Council moved for summary judgment in the Queen Anne's Action on Counts II through V of the complaint (*i.e.* all of Dr. Bailey's claims other than for specific performance), and Count I of its counterclaim (its specific performance request that Dr. Bailey be ordered to permit the Council to go ahead and replace her sliding doors). *Id.* at 4. The Council requested entry of summary judgment on those counts, arguing that (a) the bylaws governing Queen's Landing exculpated the Council from liability for Dr. Bailey's claims, and (b) the bylaws authorized the Council's sliding door brand selection. *See id.* at 7.

The Circuit Court granted summary judgment to the Council, concluding that the exculpatory clause in the condominium bylaws shielded the Council from liability for Dr. Bailey's breach of contract and fiduciary duty claims and her negligence claim. *Id.* at 9. Regarding the Council's counterclaim, the court held that the Council was responsible for replacing the doors, but found there was a genuine dispute of material fact over whether the Council's selected doors complied with the bylaws, which required that repairs and replacements "be substantially similar to the original construction and installation" and "of first-class quality." *Id.* at 12-13. The parties later settled the remainder of the case.[3]

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)

---

[3] The parties have not provided a copy of the settlement agreement nor has Defendant argued that it contained a release that would bar Plaintiff's claims in this action.

(quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). "[T]he preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered"—here, Maryland. *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008). Under Maryland law, for an earlier judgment to bar a subsequent claim (1) "the parties in the present litigation [must be] the same or in privity with the parties in the earlier dispute," (2) "the claim presented in the current action [must be] identical to the one determined in the prior adjudication," and (3) there must have "been a final judgment on the merits." *Id.* (citing *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005)). Courts in the Fourth Circuit also consider "two practical considerations" in addition to these "'three formal elements' of res judicata," *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) (quoting *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003)), namely: (4) "whether the party or its privy knew or should have known of its claims at the time of the first action," and (5) "whether the court that ruled in the first suit was an effective forum to litigate the relevant claims." *Id.* (citing *Grausz*, 321 F.3d at 473-74).

The question presented is whether the judgment in the Queen Anne's Action has claim preclusive effect, barring some or all of Dr. Bailey's claims asserted in this case.

First, the parties are identical in the Queen Anne's Action and the instant case. *Compare* Compl. at 1 *with* QA Compl. at 1.

Second, the question whether the "claim presented" in this case is "identical" to those determined in the prior action does not turn on whether the current claims "proceed[] on the same legal theory" as in the first suit, but rather whether "the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg.*

10

*Co.*, 914 F.2d 39, 42 (4th Cir. 1990)). In the current case, Dr. Bailey asserts that the Council discriminated against her on the basis of race. One aspect of the alleged discrimination relates to Defendant's alleged failure to properly maintain, repair, or replace the sliding doors of Plaintiff's unit, which allegedly caused water damage. The Council argues that at least as to that aspect of this case, the Queen Anne's judgment is claim-preclusive. Def.'s Mem. at 8-9. Dr. Bailey argues that even though in both cases she sought damages in connection with the parties' disputes related to her sliding doors, that aspect of this case is not identical because the Queen Anne's Action focused on financial losses and sounded in contract while the current claim is based on violations of the FHA. Opp. at 3-4. But packaging the same facts under a different theory will not prevent the application of claim preclusion. *Ohio Valley Env't Coal.*, 556 F.3d at 210. "Newly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Laurel Sand & Gravel*, 519 F.3d at 162 (quoting *Tahoe Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003)). Here, the current claims regarding the sliding doors arise from the same nucleus of operative facts alleged in the Queen Anne's Action.

Third, the judgment of the Circuit Court in the Queen Anne's Action is a final judgment on the merits. *Pottratz v. Davis*, 588 F. Supp. 949, 954 (D. Md. 1984) ("A summary judgment dismissal *is* a final adjudication on the merits under Fourth Circuit cases and under the Maryland authorities.") (citing *Adkins v. Allstate*, 729 F.2d 974, 976 n.3 (4th Cir. 1984)). The remaining counts, not dismissed by summary judgment, were subsequently dismissed by the parties, apparently pursuant to a settlement.

Fourth, Dr. Bailey knew of her discrimination claims during the pendency of the Queen Anne's Action. Plaintiff alleges in her complaint that on October 8, 2019, prior to filing the

11

Queen Anne's Action, she filed discrimination claims against the Council with the United States Department of Housing and Urban Development ("HUD"). Compl. ¶ 6. Likewise, Plaintiff alleges that on June 8, 2021, during the Queen Anne's Action, she again filed a discrimination complaint with HUD against the Council. *Id.* ¶ 9. Plaintiff voluntarily dismissed both complaints. *Id.* ¶¶ 8 & 10. Thus, Plaintiff was aware of her discrimination claims during the pendency of the Queen Anne's Action.

Fifth, the Circuit Court in the Queen Anne's Action was an effective forum to litigate Plaintiff's discrimination claims because claims under the Fair Housing Act can be brought in state or federal court. 42 U.S.C. § 3613(a)(1)(A).

Accordingly, insofar as Dr. Bailey knew or should have known of her federal claims at the time of the Queen Anne's Action, each element of res judicata is satisfied. Having already litigated those claims, and lost or settled them, Dr. Bailey is precluded from attempting to relitigate them now.

That leaves the question, however, of which of Dr. Bailey's federal claims, asserted in this case, fall outside the preclusive effect of the Queen Anne's judgment. There can be little question that insofar as Dr. Bailey contends that the Council's handling of the sliding door issues and related water leaks were the product of racial discrimination, those claims are precluded. As Plaintiff argues, however, she raises allegations in the current complaint of discriminatory and retaliatory animus that involve incidents unrelated to the sliding doors, including incidents that arose after the conclusion of the Queen Anne's Action. Based on the information presented on the current record, the latter do not appear to be barred by claim preclusion or the effect of a release in the parties' prior settlement agreement. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) ("While the 1943 judgment precludes recovery on claims arising prior to its

entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."); *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) ("Res judicata does not bar claims that did not exist at the time of the prior litigation."). As discussed below, although the present complaint will be dismissed, Dr. Bailey may file an amended complaint, limited to claims (if any) that she contends she did not know about and could not have known about at the time of the Queen Anne's action, and that also are timely and that state claims on which relief can be granted.

    **2.**    **Timeliness**

In addition to claim preclusion, the Council argues that at least some of Dr. Bailey's FHA claims also fail through application of the FHA's two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."). *See also* Def.'s Mem. at 10. Plaintiff filed her current complaint on June 8, 2023, meaning that her FHA claim, to be timely, must allege a discriminatory housing practice that "occurre[d]" or "terminat[ed]" no earlier than June 8, 2021.

As discussed above, Dr. Bailey complains of conduct by the Council some of which occurred before June 2021, and some after. The latter includes her allegations (1) that in August-September 2022 her white neighbors had received new sliding doors while she had not, Compl. ¶¶ 28-30; (2) that since 2015, members of Defendant's administrative staff have told Plaintiff that they feel threatened by her but have treated white owners respectfully, *id.* ¶ 31; (3) regarding the March 2023 leaking pipe in a neighboring unit, *id.* ¶ 32; (4) relating to photos of Dr. Bailey inspecting her allegedly tampered-with front door, *id.* ¶ 33; and (5) regarding the installation of

video cameras and motion detecting lights, *id.* ¶ 34. As to occurrences after June 8, 2021, the FHA's statute of limitations does not bar such claims.

Dr. Bailey also argues that even as to occurrences before June 8, 2021, they are timely because the Council's conduct constitutes a pattern, one that did not "terminat[e]" within the meaning of the statute of limitations until after June 2021 if at all. Indeed, use of the word "termination" in the statute indicates that "the continuing violations doctrine is the appropriate and intended rule to apply to the FHAA limitations provision." *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F. Supp. 2d 700, 709-10 (D. Md. 1999). *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) ("[W]here a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice.").

The problem is that although Plaintiff, in her opposition to the motion to dismiss, invokes the continuing violations doctrine, Opp. 6, her complaint does not allege a continuous "practice" like the "continuing policy of racial steering" that triggered application of the continuing violations doctrine in *Havens. See Baltimore Neighborhoods*, 40 F. Supp. 2d at 710. Instead, the complaint alleges various isolated events, by different individuals, and some with arguably cognizable alleged adverse consequences and others without. Particularly because the complaint asserts some claims that are barred by claim preclusion as discussed above, and alleges occurrences that, absent operation of the continuing violation doctrine, would be untimely, and because it is not clear whether the post-June 2021 occurrences even if accepted as true constitute

"discriminat[ion] . . . in the terms, conditions, or privileges of sale or rental of a dwelling," 42 U.S.C. § 3604(b), *see* § III.C, *infra*, the motion to dismiss will be granted.

### C. Leave to Amend

As to each of Dr. Bailey's claims, she argues that if the Court concludes that her complaint has failed to state a claim, she should be granted leave to amend. Opp. 8 (citing Fed. R. Civ. P. 15(a)(2)). Rule 15(a)(2) instructs that a court "should freely give leave when justice so requires." Under that standard, leave to amend should be denied only "(1) when the opposing party would be prejudiced; (2) when the amendment is sought in bad faith; or (3) when the proposed amendment would be futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

As to Count IV, dismissal will be with prejudice. A condominium residence simply is not a "commercial facility" or "public accommodation" within the meaning of 28 C.F.R. Part 36.

As to the remaining counts, dismissal will be without prejudice, but if Dr. Bailey elects to file an amended complaint, it must comply with and be consistent with this opinion. As to Counts II and III, for example, allegations of discrimination on the basis of sex or disability must cure the deficiencies described in section III.A above. And as to her claims of discrimination and retaliation under the FHA, an amended complaint must be limited to claims that (a) are not precluded by the Queen Anne's Action, (b) are timely under the FHA's two-year statute of limitations, and (c) state claims on which relief can be granted. As to the last point, the complaint appears to seek relief in Count I under a disparate treatment theory, not disparate impact. *See* Compl. ¶ 40. As the complaint acknowledges, a disparate treatment claim requires allegations (and eventually proof) of a "disproportionately adverse effect" on a plaintiff asserting such a claim, *id.* (quoting *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 421 (4th Cir. 2018)), as well "discriminatory intent or motive." *Montgomery County, Maryland v. Bank of*

15

*America*, 421 F. Supp. 3d 170, 181 (D. Md. 2019). Although the Court does not decide at this time whether the continuing violations doctrine applies, or whether particular post-June 2021 occurrences were the product of discriminatory intent or motive and had a disproportionately adverse effect on Dr. Bailey because of her race, the Court notes that some of the alleged acts were not performed by Defendant, and Plaintiff does not allege, for example, that the residents who received cameras were of a different race, sex, or ability than her. Similarly, for retaliation, Plaintiff must plausibly allege that she not only was engaged in protected activity of which the Council was aware, but also that the Council took adverse action against her that was causally connected to the protected activity. *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (citing *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003)).

### IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss. Plaintiff, however, may file an amended complaint no later than January 19, 2024 that complies with the law and this memorandum. An appropriate order follows.


Date: December 21, 2023                                        /s/
                                                               Adam B. Abelson
                                                               United States Magistrate Judge